NATIONAL SURETY COMPANY *v.* SOUTHERN LUMBER & SUPPLY COMPANY.

Opinion delivered February 24, 1930.

*Barber & Henry,* for appellant.
*L. P. Biggs,* for appellee.

MEHAFFY, J. Crutchfield & Jeffus, contractors, had a separate contract with each of three school districts to erect school buildings. There was a contract with the Gregory district, another with the Hilleman and another with the Howell-Wiville. The contractors entered into a bond for the faithful performance of their contracts as provided by statute. There was one bond in each case. The appellant, however, was surety in each of the bonds. The buildings were erected and the contractors gave checks for the amount due to all the creditors. The bank declined to pay any of the checks because funds of the contractors in the bank were insufficient to pay all the

checks. The contractors had given three checks to the appellee, one for the full amount on each of the contracts. It was afterwards ascertained that the funds of the contractors in the bank amounted to 95 per cent. of the aggregate indebtedness on the three contracts. The creditors then entered into an agreement whereby all of the money would be paid out by the contractors by paying each creditor 95 per cent. of the amount due said creditor. The amount on deposit in the bank to the credit of the contractors was $9,752.72, and the amount of the indebtedness was $10,137.53. 95 per cent. of the amount due appellee on the three contracts was $7,397.47.

After the creditors had entered into the agreement the contractors sent a check to appellee for $7,397.47. This was 95 per cent. of the amount due appellee on the three contracts. Nothing was said by the debtor about how it should be applied, and the creditor, appellee, applied the sum thus received so as to pay in full the amount due on the Gregory job, and also the amount in full on the Hilleman job, leaving a balance due on the Howell-Wiville job of $388.79.

The appellee brought suit against the surety company and contractors to recover this amount. There was a judgment in favor of appellee for the amount sued for, and this appeal is prosecuted to reverse said judgment.

One provision in the contract entered into by the creditors whereby each received 95 per cent. of the amount due was as follows:

"It is further agreed, however, that this instrument shall not be taken as a release of any liability on the part of Crutchfield & Jeffus or the National Surety Company, and it is understood and agreed that the Farmers' National Bank, and the various creditors entering into this agreement do not undertake to release Crutchfield & Jeffus or the National Surety Company, but that any cause of action against the said Crutchfield & Jeffus or the National Surety Company shall be preserved."

As stated by appellant in its brief, the appellee's cause of action is based upon the appellant's liability under the terms of the bond executed by it on the Howell-Wiville contract for an alleged balance due for material furnished by appellee for construction of the Howell-Wiville school. The appellant admits a balance due the appellee on the Howell-Wiville job of $157.71, and tendered this amount in court, appellant's theory being that, since the creditors were paid 95 per cent. of their claims this should have been applied on the separate contracts, paying 95 per cent. of each, and that that would leave a balance due on the contract sued on of $157.71. Of course if this application of payments had been made, there would have been an indebtedness or balance due on each of the other contracts and the three amounts would total the amount sued for in this action, and it calls especial attention to the following paragraph in the agreement entered into by the creditors:

"Each of the said creditors is to be paid out of the total amount in the hands of the said bank a proportionate sum represented by the proportionate part that the check of each creditor bears to the total amount due all the creditors."

In other words, pay to each creditor 95 per cent. This was done in the instant case. The appellee was paid 95 per cent., but there was no application made by the debtor, and no suggestion as to how the payments should be applied.

It is contended on the part of the appellant that, since appellee received a proportionate amount upon its total account, it necessarily received its proportionate payment on the Howell-Wiville job. We do not agree with the appellant in this contention. The contractors were indebted to appellee on three separate accounts paid $7,397.47, and the creditor applied the payment as above shown.

Appellant contends, and correctly, that an application of payments once made, either by the debtor or the

creditor, discharges the guarantor *pro tanto,* and cannot be affected by change of application by the creditor and the principal debtor. It is true that an application, once made, cannot be changed, but in the instant case there had never been an application. The three checks that were given first, if they had been honored, would have been a payment in full on the three contracts. So, there was not even a suggestion of an application of payments in that. Then, when the last check was sent, the debtor made no request as to how it should be applied, and it was applied as above set forth.

"The right to apply payments is one strictly existing between the original parties, and no third person has any authority to insist on an appropriation of the money in his own favor, where neither the debtor nor the creditor has made or required any such appropriation. * * * While the authorities are not entirely in accord, third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of several debts, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payments in the manner most beneficial to such persons. This rule applies as well to a corporation engaged in the business of writing surety bonds for a compensation, as to an ordinary accommodation surety. Accordingly, it has been held that where a creditor has several demands against the same debtor, one of which is secured by an indorsement, and he has procured attachments to be issued and levied on all the demands, he has the right to apply the proceeds of the attachment to the satisfaction of the demands not secured by the indorsement, and then seek satisfaction, if necessary, from the indorser." 21 R. C. L. 107-8.

"The exercise of the right of appropriation of payments belongs exclusively to the debtor and creditor, and no third person can control or be heard for the purpose of compelling a different appropriation from

that agreed upon by them. But an appropriation by either party cannot afterward be changed so as to injuriously affect the rights of third persons. * * * Third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of the debts, cannot control the application of a payment by either the debtor or the creditor, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons.'' 30 Cyc. 1250-51.

''In a case in Michigan where a bond was given by a contractor to insure the payment of labor and material furnished on the contract, it was held that the sureties were not relieved by reason of the payment of an antecedent debt from the contract price of the improvement. It was said: 'This bond did not, in terms, provide that the contractor should apply his earnings to pay the laborers or materialmen, and the statute does not provide for such a bond. It undertook that the contractor should perform his personal obligations in his own way. It contemplated that he would receive and disburse his money as should suit his convenience. * * * The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are in fact insurers, and in determining their rights and liabilities, the rules peculiar to suretyship do not apply.' '' *Chicago Lbr. Co.* v. *Douglas,* 89 Kan. 308, 131 Pac. 563, 44 L. R. A. (N. S.) 843; *Valve Mfg. Co.* v. *Fidelity & Casualty Co. of New York,* 114 Kan. 151, 217 Pac. 282; *Salt Lake City* v. *O'Connor,* 68 Utah 233, 249 Pac. 810; *Puget Sound State Bank* v. *Gallucci,* 82 Wash. 445, 144 Pac. 698, 39 Am. & Eng. Ann. Cas., 767; *Wyandotte Paving & Const. Co.* v. *Wyandotte Coal & Lime Co.,* 97 Kan. 203, 154 Pac. 1012, Ann. Cases 1917C, 580.

Where there are different sureties on different contracts, still the debtor and creditor have the right to ap-

propriate the payments.' If this surety company had been surety on the bond sued on in this case, and other surety companies were sureties on the other bond, still either the debtor or creditor would have had the right to appropriate the payments to the other two, and the surety company could not complain. In the instant case, however, the appellant was surety on each bond, and, according to its own contention, if the payments had been applied like it says they should have been applied, it would have owed the same amounts, but would have owed it on three separate contracts. If the payments had been applied as suggested by the appellant, the funds would have been insufficient to pay the amounts due on each of the contracts, and the balance due on the three contracts, for which the surety company would have been liable, would have been the amount sued for in this case. In other words, if the course suggested by appellant had been pursued, the appellant would have been liable for the same amount, but on three contracts instead of one.

There is no controversy about the amount that was due at the time the $7,397.47 was paid. The appellant does not claim that it paid the debts, but admits that it left a balance of $388.79 for which it would have been liable if the payments had been made on each of the claims as suggested by appellant. Therefore, there could have been no injustice in this case in the application of the payments by the creditor. The surety company is not called upon to pay any more than it admits it would have been liable for, if the payments had been applied as suggested by it. But, even if that were not true, as we have already said, the debtor and creditor are the persons who have the right to make the application, and the third person or surety company has no right to be heard, and no right to direct how the payments shall be applied. The rule as announced by this court is that the debtor at the time of making a payment has the right to direct the application. If he fails to make such ap-

plication, the creditor has the right to make it. *Briggs v. Steele,* 91 Ark. 458, 121 S. W. 754.

But, whether the creditor or the debtor had a right to make it and did it, the appellant has sustained no injury, because it has not been called on to pay any more than the evidence conclusively shows it was liable for.

We find no error, and the judgment of the circuit court is affirmed.