[Civ. No. 223. Fifth Dist. May 21, 1963.]

J. C. WATTENBARGER & SONS, Plaintiff and Appellant, v. ROY L. SANDERS, Defendant and Respondent.

496

Vizzard, Baker, Sullivan & McFarland and Jere N. Sullivan for Plaintiff and Appellant.

Deadrich & Bates and Kenneth H. Bates for Defendant and Respondent.

CONLEY, P. J.—J. C. Wattenbarger & Sons is a corporation engaged in the sale of building materials and supplies. It sued the defendants, Lester W. Sanders, Anna L. Sanders, Charles W. Hauser, Sherlene Hauser and the respondent herein, Roy L. Sanders, individually and doing business as C & L Construction Co., Ltd., a copartnership. All of the defendants except respondent Roy L. Sanders defaulted, and a judgment was granted plaintiff against them in the sum of $6,-532.24 principal, $3,070.40 interest, and $500 attorneys' fees, besides costs of suit. The judgment, however, was in favor of Roy L. Sanders, a limited partner, and the plaintiff appealed.

The merits of the appeal depend on whether Roy L. Sanders was responsible to the plaintiff on its account against the partnership for supplies and materials as an alleged general, or as an admittedly limited, partner.

This case previously came before the Fourth District Court of Appeal after the trial court had granted a summary judgment in favor of Roy L. Sanders (*J. C. Wattenbarger & Sons* v. *Sanders*, 191 Cal.App.2d 857 [13 Cal.Rptr. 92]); that judgment was reversed because there were issues of fact which required a trial on the merits.

After the reversal, the case was tried as a contested matter by the court sitting without a jury. Points urged on appeal by the plaintiff are as follows: (1) It is claimed that Roy L. Sanders is liable to the appellant because he allegedly held himself out to the world as a general partner through the publication of a notice that the partnership was transacting business under a fictitious name; (2) even if it be considered that he was, as he claims, only a limited partner, it is argued that he is liable to the plaintiff on the ground that his status as a limited partner as described in the certificate of limited partnership requires that he pay the appellant as a creditor of the partnership or as a third party beneficiary; (3) it is claimed that the findings are insufficient in various particulars; and (4) it is argued that the attorneys' fees of $500 granted by the court pursuant to a contract by which the partnership agreed to pay reasonable attorneys' fees in the event of an action are inadequate.

■ This last contention may be summarily dealt with. The appellant did not appeal from that portion of the judgment which awarded attorneys' fees in its favor against all of the defendants except Roy L. Sanders. Obviously, there is no right to complain of a portion of the judgment not appealed from. ■ It may be noted in passing that a trial court has a wide discretion in determining the amount of attorneys' fees to be awarded and even if the appeal had been broad enough to make this point available to appellant this court would not have interfered with the action of the court below. (*Independant Iron Works, Inc.* v. *County of Tulare,* 207 Cal.App.2d 164, 167 [24 Cal.Rptr. 361]; *City of Los Angeles* v. *Los Angeles-Inyo Farms Co.,* 134 Cal.App. 268, 274 [25 P.2d 224].) The trial court's award of $500 on a default judgment taken against four defendants, two of whom had gone through bankruptcy, was within the proper orbit of the trial court's discretion.

■ Considering the first of the grounds above specified, it is appellant's contention that by the mere execution, publication and filing of the fictitious name certificate, reading as follows, the appellant became liable as a general partner:

''The undersigned do hereby certify that they are conducting a real estate development business at 400 Hazel Street in the City of Bakersfield, County of Kern, State of California, under the fictitious trade name of C & L Construction Co., Ltd. and that said firm is composed of the following persons, whose names and addresses is [*sic*] as follows, to-wit:

| Names | Residence Addresses |
|---|---|
| Charles W. Hauser | 214 Columbus Street, Bakersfield, California |
| L. W. Sanders | 400 Hazel Street, Bakersfield, California |
| Roy L. Sanders | P. O. Box 432, Shell Beach, California'' |

Appellant argues that by this certificate, respondent informed the world that he was one of the persons conducting a real estate development business at the above address and that as he did not therein declare that he was a limited partner or that the basis of his participation in the business differed from that of the other partners, everyone, including plaintiff, had a right to treat him thereafter as a general partner.

While it has been said that the underlying reason for requiring the publication and filing of a certificate of this kind is to give to the general public information as to the membership behind a fictitious partnership name so that the public will know the individuals with whom they are dealing and to whom they are giving credit or becoming bound (*Andrew* v. *Glick*, 205 Cal. 699, 701 [272 P. 587]; *Levelon Builders, Inc.* v. *Lynn*, 194 Cal.App.2d 657, 662 [15 Cal.Rptr. 582]; *Hunter* v. *Croysdill*, 169 Cal.App.2d 307 [337 P.2d 174]; *Hixson* v. *Boren*, 144 Cal.App.2d 547, 553 [301 P.2d 615]), it is not stated in the code section itself or in any cogent authority that anyone whose name appears without qualification in such a certificate will *ipso facto* be held as a general partner; the only penalty inflicted as a consequence of a failure to conform with the code section is that upon proper objection no fictitiously named partnership which has failed to comply with the statutory requirements will be permitted to carry on a lawsuit. (Civ. Code, § 2468.) ▮ Conformity with the code section is not jurisdictional, for partners who are acting under a fictitious name when no such publication has been made may enter into contracts and carry on business, and a defendant in a suit brought in the name of the fictitious partnership waives the objection to proceeding with the action if he does not specifically raise it. (3 Witkin, Summary of California Law, Partnership, § 4, pp. 2265-2266.)

▮ The question to be answered when it is contended that a defendant is an ostensible partner is whether the acts and conduct of an individual were factually and legally suffi-

cient to lead another person to believe he was a copartner and assumed responsibility as such. This is an issue for the trial court to determine from all of the evidence in the case. (*Calada Materials Co.* v. *Collins,* 184 Cal.App.2d 250, 253 [7 Cal.Rptr. 374].)

██ Reliance upon an actual or apparent representation of partnership is an essential element to be proven and respondent points out that the record shows that the certificate of fictitious name did not come to the attention of any of appellant's officers until the middle or latter part of July, at a time when the transactions which are the subject of the action were almost completed.

One may reasonably assume that the credit investigating arm of a modern business establishment would make rather extensive inquiries as to the participation and financial standing of those involved in a partnership business. ██ Roy L. Sanders and the general partners executed an amended certificate of limited partnership, filed it with the county clerk on May 21, 1958, and recorded it on May 26, 1958, before the filing and publication of the fictitious partnership certificate; this furnished available notice that he was in fact a limited partner. Respondent correctly urges that there was ample evidence to justify the court's finding that respondent was never held out as a general partner, and that the execution of the certificate of fictitious name could not serve as a matter of law to change respondent's status. There is no intimation in the record that Roy L. Sanders ever in fact acted as a general partner or that he intended at any time to be anything other than a limited partner. Upon the evidence presented, the court made a determination that Roy L. Sanders did enter into the limited partnership in good faith, believing that he was to be a limited partner and nothing else; that he took no part in the direction, control or management of the business and that there was never any intention on his part to be anything other than a limited partner. It is also noteworthy that no claim was ever made by appellant or by any other creditor that Roy L. Sanders was anything other than a limited partner until some two years after the business transactions here in question had been completed. He received no profits from the business and had withdrawn nothing from the partnership. When the partnership went into bankruptcy, notice of that fact was given to him; he did not file any claim or participate in any way in that proceeding as he would have had a right to do if he had been a general

partner. (11 U.S.C.A. § 23.) We believe that there was ample evidence to justify the court below in finding that Roy L. Sanders in effect was a limited partner at all times.

■ Furthermore, in his answer respondent specifically renounced any claim to the property of the partnership. While we believe that at all times he was a limited partner, if the contention of the appellant that he became a general partner through the mere execution and publication of the certificate of fictitious name is correct, then the renunciation pursuant to section 15511 of the Corporations Code would serve to justify a judgment in his favor, as the trial court found that he believed that he was a limited partner and that he acted in good faith. (*Giles* v. *Vette*, 263 U.S. 553 [44 S.Ct. 157, 68 L.Ed. 441]; *Gilman Paint & Varnish Co.* v. *Legum*, 197 Md. 665 [80 A.2d 906]; *Rathke* v. *Griffith*, 36 Wn.2d 394 [218 P.2d 757, 18 A.L.R.2d 1349].)

■ As a second line of attack on the judgment appellant contends that even if Roy L. Sanders is only a limited partner, he is liable to the appellant by reason of the provision of the partnership agreement relied upon which reads as follows:

''The Limited Partner, Roy L. Sanders, shall contribute the sum of $100.00, and further shall, as his contribution to the partnership, act as a personal guarantor of real estate and business transactions of the partnership when the assets and credit of the partnership and the General Partners do not afford the required security for said transactions.''

Appellant advances his theory of liability in two branches: first, it is argued that by the specific language above quoted Roy L. Sanders undertook to pay all creditors if the required security for the transactions which they entered into with the partnership was absent; and second, it is suggested that the partnership agreement was one for the benefit of third persons, including the plaintiff.

Initially, it seems clear that the quoted paragraph is not a current and continuing guaranty to all possible creditors of the partnership that Roy L. Sanders would pay everything that the partnership was not able to pay. The language used indicates the general function of Roy L. Sanders over and above his specific contribution of $100, to ''act as a personal guarantor'' in instances where he would be requested and would consent so to act in the course of specific business dealings which might arise; it seems unreasonable to think that anyone in this day and age would issue a general guaranty of all future dealings of an organization without an un-

dertaking specifically pointed to the business involved. This differing construction of the language of the limited partnership agreement is applicable to each of the two branches of appellant's argument and is a complete answer to his theory of liability dependent upon the terms of the agreement itself.

But even if the language means what the appellant incorrectly contends that it means, this would not make the guaranty effective in the absence of proof that at the time of contracting the debt in question the assets and credit of the partnership did not afford the required security for such transactions. It is elementary that a guarantor cannot be held beyond the express terms of his guaranty and that contracts of guaranty create no liability beyond what is expressed in them. (*Hart, Schaffner & Marx* v. *Vaughn,* 17 Cal.App.2d 516, 519 [62 P.2d 377]; *Murphy* v. *Hellman Commercial etc. Bank,* 43 Cal.App. 579, 587 [185 P. 485]; *San Francisco Theological Seminary* v. *Monterey County Gas & Electric Co.,* 179 Cal. 166 [175 P. 693].) On May 27, 1958, a Bank of America financial statement showed that C & L Construction Co., Ltd., had assets of $40,150 and liabilities of $2,799.90 (Exhibit 4). No evidence was introduced to show any change in the financial condition of the partnership through the remainder of 1958 or 1959. In January of 1960, 18 months after the last business transaction with appellant, the two general partners filed voluntary petitions in bankruptcy, and the limited partnership was also adjudicated a bankrupt. No proof was made by appellant that " . . . the assets and credit of the partnership and the General Partners . . . [did] not afford the required security for said transactions," as of the time of their occurrence. Furthermore, if this was a general guaranty in favor of creditors, there is no proof that credit was extended with knowledge of it and reliance upon it. (*Calcot Assn., Ltd.* v. *Coast Cotton Mills,* 140 Cal.App.2d 268, 272 [295 P.2d 1]; 24 Am.Jur., Guaranty, § 16, p. 885.) Appellant distinguishes between his claims of liability on theories of guaranty and third party beneficiary by arguing that proof of knowledge of the contract and reliance thereon are not necessary as to third parties beneficiary. In view of our construction of the contract of limited partnership, this distinction is immaterial. The trial court correctly held that there was no liability to appellant by reason of the partnership agreement.

There is no merit in the claim that the findings are fatally defective. (a) Appellant protests that he alleged in

paragraph V of his fifth cause of action that at all times mentioned the credit of the partnership known as C & L Construction Co., Ltd., and of the general partners of said partnership did not afford the required security for said transaction but that the court failed to make a finding either way in regard to this allegation. However, it is a respected general rule that when there is no evidence in the record which would have supported a finding favorable to an appellant, the failure to make a finding on the subject does not constitute error. As is said in 2 Witkin, California Procedure, Trial, section 119, page 1851:

"The appellant may justly complain if he introduces evidence sufficient to support a finding in his favor on a material issue, and the court fails to make any finding thereon. But if he produces no evidence on the issue, or the evidence is such that the finding would necessarily be adverse to him, he suffers no prejudice from the failure to make it, and there is no reversible error. [Citing cases.]" (See *Winslow* v. *Gohransen,* 88 Cal. 450 [26 P. 504]; *Pry Corp. of America* v. *Leach,* 177 Cal.App.2d 632 [2 Cal.Rptr. 425]; *Bank of America* v. *O'Shields,* 128 Cal.App.2d 212, 219 [275 P.2d 153].)

As already pointed out, the only evidence introduced on this subject which related to the approximate time of contracting the liabilities was a financial statement of the Bank of America dated May 27, 1958, which showed that the partnership had assets of $40,150 as against liabilities of only $2,799.90. It is apparent that if a finding had been made it would have been adverse to the appellant and that appellant has no right to complain of its absence.

(b) Appellant insists that the court should have made a finding that the certificate of fictitious name was duly and regularly filed and published. However, there is no pleading which specifically raises any such issue, and it is elementary that findings should not be made on evidentiary facts, but must be confined to the ultimate facts, and appellant has no just cause to complain. (*Morrow* v. *Morrow,* 201 Cal.App.2d 235, 239 [20 Cal.Rptr. 338]; *Lewetzow* v. *Sapiro,* 188 Cal.App.2d 841, 845 [11 Cal.Rptr. 126]; *Siquig* v. *West Coast Pickle Co.,* 161 Cal.App.2d 254, 258 [326 P.2d 596].)

(c) Appellant also asserts that the court made no specific finding as to whether Roy L. Sanders was a limited or general partner. It seems clear to us that the court did determine that he was a limited partner; although not using those specific words, there are findings that respondent is not

indebted to appellant, that respondent did execute an amended certificate of limited partnership, that he acted in good faith in executing the amended certificate and believed that he was a limited partner. The findings sufficiently show the trial court's view that the respondent was a limited partner.

(d) Appellant criticizes the trial court for not making a finding that the limited partnership certificate had been filed within a reasonable time after its execution. It was signed on May 5, 1958, filed on May 21 and recorded May 26, 1958. Appellant cites *Stowe* v. *Merrilees,* 6 Cal.App.2d 217, 222 [44 P.2d 368], in support of its claim, but as respondent correctly points out, that case does not hold that the delay voided the certificate; it was there said that the limited partnership statute must be liberally construed, that a *"reasonable time is allowed"* for completing the filing and publication, that the party asserting the alleged defects through delay had done business with the partnership after the certificate was recorded "and, as to him, a valid limited partnership had been formed." The evidence shows that appellant did business with the limited partnership for a substantial period of time after May 26, 1958, so that if a finding had been made it would necessarily have been adverse to appellant; appellant cannot now complain.

(e) Appellant argues that finding No. 7 of the trial court is only a conclusion of law. The finding states: "It is true that defendant Roy L. Sanders is not indebted to plaintiff in any sum whatsoever." Appellant contends that this is not a finding of fact, citing *Ryan* v. *Jacques,* 103 Cal. 280, 286 [37 P. 186], and *Adams-Campbell. Co.* v. *Jones,* 71 Cal. App. 723, 726 [236 P. 322].

Respondent, however, properly maintains that the seventh finding is supported by adequate evidence and is a true and correct finding of fact which disposes of the appeal, the one finding which determines the cause as far as appellant and respondent are concerned and points out that if findings are made on issues that determine the case, other issues become immaterial and a failure to make findings does not constitute prejudical error. (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Broadway Federal etc. Loan Assn.* v. *Howard,* 133 Cal.App.2d 382, 396 [285 P.2d 61]; *Leonard* v. *Fallas,* 51 Cal.2d 649, 653 [335 P.2d 665]; *Berk* v. *Twenty-nine Palms Ranchos, Inc.,* 201 Cal.App.2d 625, 634 [20 Cal. Rptr. 144]; *Lattanzi* v. *San Moritz Club,* 202 Cal.App.2d 546, 551 [20 Cal.Rptr. 847].)

The definitive and compelling answer to this claim of appellant lies in the fact that he saw fit to sue by common count in several of his causes of action, and that the finding is properly responsive to his own pleading.

"... indebtedness is 'one of those peculiar statements which may constitute either a finding of fact or a conclusion of law, according to the connection in which or the circumstances under which it is employed.' (*Lynip* v. *Alturas School Dist.*, *supra* [24 Cal.App. 426, 435 (141 P. 835)].) Thus, where a general pleading of indebtedness is proper, as in actions on the *common counts*, a finding in the language of the pleading is likewise sufficient. (*Wood* v. *Mesmer* (1920) 46 Cal.App. 257, 259, [189 P. 134]; *Biurrun* v. *Elizalde* (1925) 75 Cal. App. 44, 55 [242 P. 109].)" (2 Witkin, California Procedure, Trial, § 113, p. 1845.)

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.